## WILLIAM C. FOSTER v. CITY OF DULUTH.[1]

February 14, 1913.

Nos. 17,904—(241).

**Public property not taxable.**

The property of the state and of its political subdivisions, arms, and agencies, such as cities within its borders, when used for exclusively public purposes, is not subject to taxation, or to proceedings for the assessment of taxes, or for their collection by judgment and sale.

**Enforcement of prior tax against public property invalid.**

Where real property, acquired by the state or a city for exclusively public purposes, is, when so acquired, subject to a lien for unpaid taxes, all proceedings taken to enforce such lien, after the property is so acquired for public purposes, are void.

Action of ejectment in the district court for St. Louis county. The case was tried before Dibell, J., who made findings and ordered judgment in favor of defendant. From an order denying plaintiff's motion for a new trial, he appealed. Affirmed.

William G. White, for appellant.

H. A. Carmichael, for respondent.

[1] Reported in 140 N. W. 129.

Note.—On the question of the liability of public property to local assessments, see notes in 35 L.R.A. 38 and 18 L.R.A. (N.S.) 453.

BUNN, J.

This is an action in ejectment to recover the possession of eight lots in Duluth. The complaint alleged that plaintiff was the owner in fee, and that defendant was wrongfully in possession. The answer denied that plaintiff was the owner, admitted defendant's possession, and alleged that defendant was the owner in fee of the property. The trial resulted in a decision in favor of defendant, and plaintiff appealed from an order denying a new trial.

The ultimate question involved is whether plaintiff or defendant is the owner of the property. The facts are as follows: Prior to July 17, 1905, Emily Galusha owned the lots. On that day she conveyed to the city of Duluth, and soon thereafter the city constructed thereon an "incinerator plant or crematory," for the disposal of garbage, and the lots have since been used by the city for this purpose. Plaintiff's claim of title is based upon tax certificates issued upon a sale held pursuant to a tax judgment rendered in 1907 for the taxes for the year 1905. Notices of expiration of the time for redemption were given in February, 1911, directed to the city of Duluth, in whose name the lots appeared from the assessment book for 1910 to be assessed. There was no redemption.

Plaintiff claims that the lien for the 1905 tax attached May 1, 1905; that it is a perpetual lien from that date; that the city, when it purchased the property in July, 1905, took it subject to this lien; and that, though the land was not subject to taxation after July 17, 1905, the judgment was valid, and also the sale and subsequent proceedings. Defendant claims that the lien for the 1905 tax did not attach until after the conveyance to the city, and that in any event, the property not being subject to taxation, after the city acquired it for public purposes, the court had no jurisdiction to render the tax judgment.

After its purchase by the city in July, 1905, the property was devoted to public uses, and became public property. It was not thereafter subject to taxation. This is conceded by plaintiff. It is technically inaccurate to say that it was *exempt* from taxation, for the term "exemption" rather presupposes a liability removed by some constitutional or statutory provision. The property is "ex-

empt," not because of any such provision declaring it exempt, but because of its character as public property devoted to a public use. The property of the state and of its political subdivisions, arms, or agencies, such as cities within its borders, when used exclusively for public purposes, is not subject to taxation, in the absence of constitutional or statutory provisions making public property subject to the tax laws of the state. This is the undisputed rule; but it is no better established than is the proposition that proceedings for the assessment of taxes against public property, or for their collection by judgment and sale, are absolutely void. This is not only because the property was exempt from taxation, but because it was public property. A reason for the rule is that a sale of the property to enforce collection of taxes assessed against it would destroy its character as public property, to the public injury.

The distinction is clear between property exempted from taxation by constitutional or statutory provisions, when such property would be subject to taxation in the absence of such provisions, as, for example, church property, institutions of public charity, or the property of corporations which pay a gross earnings tax, and public property used exclusively for public purposes, which would not be subject to taxation, though the Constitution had not so provided. In the one case the property exempted is private property, which for good reasons it is deemed wise or just to relieve from the burden of taxes that it would otherwise be obliged to sustain; in the other case the property is owned by the state, or by its agencies, is devoted to a public use, and is not subject to taxation for reasons that are different in character, among which may be suggested the fact that the taxation of public property owned by the state or its municipal divisions would mean that the state would be taxing itself in order to raise money to pay over to itself, and the reason, before suggested, that the collection of such taxes might result in destroying the public character of the property.

The distinction is again clearly apparent when we consider the doctrine of Chauncey v. Wass, 35 Minn. 1, 25 N. W. 457, 30 N. W. 826, which was that, in proceedings to enforce the payment of taxes against real estate, the court had jurisdiction to try the case and

render judgment against the land, notwithstanding that the taxes had been in fact paid, or that the land was in fact exempt from taxation. But this doctrine never had any application to proceedings to enforce the payment of taxes on public property. This is very clearly decided in Sanborn v. City of Minneapolis, 35 Minn. 314, 29 N. W. 126. It is interesting and important to note that this decision was rendered during the time when the court was torn up over Chauncey v. Wass, after the original decision, and before the decision on reargument. Mr. Justice Mitchell said: "Without entering at all upon the question of the conclusiveness of a tax judgment as against private persons, which is now before us in another case" (undoubtedly Chauncey v. Wass) "it is clear that it can have no force or effect whatever as against the rights of the public in these premises." The property against which the tax judgment had been entered was a public alley in Minneapolis. The decision was that the court acquired no jurisdiction, and that the judgment was void. The language of the opinion is clear and pertinent here:

"At common law the title to all public highways was in the king, for the benefit of all his subjects. In this country such title is in the state, either directly or through municipalities, or such agencies as it may create for that purpose, for the use and benefit of all its citizens. The rights or interests of the state in land are not subject to the provisions of the laws for the assessment and collection of taxes. The courts cannot, in these tax proceedings, acquire any jurisdiction over these public rights or interests. The state cannot be subjected to the jurisdiction of the courts, nor be compelled to defend in them. This was suggested in County of Chisago v. St. Paul & Duluth R. Co. 27 Minn. 109, 6 N. W. 454."

The suggestion in the case referred to was this statement by Chief Justice Gilfillan: "This jurisdiction" (in tax proceedings) "extends over the interest in the land of every person, company, or corporation—of every owner, indeed—unless where, from the character of the owner (as, for instance, the United States), the state

cannot subject such owner to the jurisdiction of its courts in respect to lands within the state." It is beyond doubt, therefore, that the doctrine of Chauncey v. Wass never had any application to tax proceedings against public property, even before the statute was enacted that made void every tax judgment rendered when the land was exempt. The Sanborn case is conclusive on this, and it is clear that the conclusion that proceedings for the assessment of taxes on public property, or for their collection by judgment and sale, are void, rests, not upon the fact that the property was exempt, but upon the fact that it was public property—that the proceedings were against the state. It is the character of the property and of its owner that makes the proceedings void.

Does the fact, conceding it to be a fact, that the lien for the 1905 taxes attached to the property before it became public property, give validity to the proceedings taken after the city acquired the title? That this would be so in the case of property which, after the lien attaches, becomes exempt because of its transfer to a church, charitable corporation, or to a corporation which pays a gross earnings tax, may be conceded. State v. Northwestern Telephone Exchange Co., 80 Minn. 17, 82 N. W. 1090; County of Martin v. Drake, 40 Minn. 137, 41 N. W. 942. See 37 Cyc. p. 897, and cases cited in note. But the cases cited are not authority on the question here, because of the vital fact that this is public property, devoted to a public use, and that the proceedings to enforce payment of the taxes are against the state, or one of its municipal subdivisions. We think, logically and reasoning from these premises, that it must be held that all proceedings taken after the property became public property were void, notwithstanding that the taxes for the current year may have been a lien on the property before its transfer. It by no means follows, as counsel for plaintiff insists it does, that, because there was a valid lien, the proceedings to enforce that lien were valid. Nor is it important here what becomes of the lien. We need not consider whether it still exists as an unenforceable lien, whether plaintiff is entitled to refundment, or whether the lien is merged in the fee title. All that is necessary to decide, and all that we do decide, is that all proceedings to assess the land for taxes,

taken after it became public property, and all proceedings in attempting to enforce and collect the tax were void.

This decision is the only one that will prevent the disastrous result of property devoted to a public use being, through the carelessness of public officials, lost to the public on tax judgments and sales, and is, we think, in entire accord with the settled policy of the state that public property shall not be subject to taxation, or to the laws in regard to proceedings to enforce the collection of taxes. It is, moreover, in harmony with our own past decisions, and supported by well-considered decisions of other courts.

In Reid v. State, 74 Ind. 252, real estate became by escheat public property of the state after a lien for taxes had attached. It was held that any assessment for taxes upon the land, or its sale for delinquent taxes, after it became state property, would be void as against the state. In State v. Academy, 13 Mo. App. 213, the same doctrine was applied to property used for charitable purposes and made exempt by a statute passed after a tax had been assessed. It was held that the act exempting the property had the effect of repealing the enactments under whose provisions the assessment was made, and that the proceedings to collect the tax were void. By citing this case we are not to be understood as approving the reasoning upon which the decision is based, or the application of the doctrine to property other than purely public property used for public purposes.

In Gasaway v. Seattle, 52 Wash. 444, 100 Pac. 991, 21 L.R.A. (N. S.) 68, the city acquired by condemnation proceedings lands for public use at a time when taxes had been levied and were delinquent and unpaid. It was decided that the city took the lands free from the lien of the taxes. The court distinguishes, if it does not practically overrule, the case of City of Puyallup v. Lakin, 45 Wash. 368, 88 Pac. 578, much relied on by plaintiff in the case at bar. It appears to us that the case was not correctly decided, and that this was appreciated by the court in the Gasaway case, which is apparently in sharp conflict with the former decision. The decision in the latter case does not rest upon any statute of Washington which frees public property from a lien for taxes which attached

before the property became public, but upon the broad principle that "no person or municipality can acquire, as against the state, a vested right to taxes, or the right to insist upon the collection of taxes when levied."

Counsel for plaintiff argues that, because there is no statute providing that the state or a city, purchasing land for a public use, may hold the land exempt from the enforcement of an existing lien for taxes, it must of necessity be held that such lien may be enforced. But, for the reasons previously stated, we think the conclusion does not follow. The rule applicable to private property, or to property used for railroad, charitable, or quasi public purposes, has no force against the state, no application to property used exclusively for purely public purposes.

The question is well stated by counsel for plaintiff in his brief: "Did the fact that this property became 'public property' on July 17, 1905, divest the courts of jurisdiction to enforce against it the collection of an existing tax lien?" Counsel concedes that, if the court had no jurisdiction to render any judgment in this tax proceedings, the judgment was a nullity, and plaintiff's title must fail. But he insists that the court did have jurisdiction to render the judgment, and bases his argument largely upon Chauncey v. Wass. This argument is answered by what we have already said in regard to the doctrine of that case not having any application to tax proceedings against public property. We do not see that State v. Camp, 79 Minn. 343, 82 N. W. 645, is at all in point. We decide the question framed by counsel in the affirmative. This disposes of the case, and makes unnecessary the consideration of other questions argued.

Order affirmed.